IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VERONICA L.,[1]

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 1:23-cv-00107-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Veronica L. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits and Title XVI Social Security Income under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for additional proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

**PROCEDURAL HISTORY**

Born in 1970, plaintiff alleges disability beginning November April 5, 2017, due to polyarthralgia, left and right epicondylitis, right elbow carpal tunnel syndrome, right ulnar neuropathy, anxiety, depression, severe nerve pain, social anxiety, and hyperthyroidism. Tr. 257, 274. Her applications were denied initially and upon reconsideration. Tr. 66-84, 85-103, 106-26, 127-47. On January 19, 2022, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 34-63. On February 17, 2022, the ALJ issued a decision finding plaintiff not disabled. Tr. 15-28. After the Appeals Council denied a request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

**THE ALJ'S FINDINGS**

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: "cervical degenerative disc disease, left ventricular systolic dysfunction, obesity, osteoarthritis bilateral hips and knees, acromioclavicular arthritis, right carpal tunnel syndrome, right medial epicondylitis, anxiety disorder, major depression, and borderline personality disorder." Tr. 17-18. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 18.

Because plaintiff failed to establish a presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except:

> "[S]he can lift carry, push, pull 20 pounds occasionally and 10 pounds frequently. She can sit for six hours in an eight-hour day and stand or walk for four hours each in an eight-hour day. She can occasionally reach overhead with the bilateral upper extremities. She can frequently reach in all other directions, and handle with the right upper extremity. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can never crawl. She can never work at unprotected heights, or around moving mechanical parts. She can understand, remember, and carry out simple, routine tasks, and make only simple work-related decisions. She can tolerate only occasional interaction with supervisors, coworkers, and the public. She could be off task five percent of the time in addition to normal breaks in an eight-hour workday."

Tr. 21.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 26. At step five, the ALJ concluded, based on the VE's testimony, there existed a significant number of jobs in the national economy plaintiff could perform despite her impairments, such as inspect hand packager, collator operator, and garment sorter. Tr. 28.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting her subjective symptom testimony; (2) rejecting the medical opinions of Anjanette Devine, FNP, Paulie Hawthorne, MSW, CSWA, and Darcy Butcher, FNP; and (3) rejecting lay witness testimony. Pl.'s Opening Br. 5, ECF 13. The Court finds the second issue raised by plaintiff dispositive.

**I.    Plaintiff's Testimony**

Plaintiff contends the ALJ erred by discrediting her testimony concerning the extent of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified she was unable to work due to anxiety, panic attacks, inability to handle stress, inability to focus, tremors in her hands that cause her to drop things and lose her grip, pain and numbness in her arms, intermittent pain in her hips, knees, and feet, pain in her neck that radiates into her shoulders, and lack of motivation. Tr. 43-47, 49-53. Plaintiff's function report included further limitations, such as a limited ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. Tr. 306. Plaintiff also stated she could only occasionally lift five pounds or less and walk only 10 to 15 yards before needing to stop and rest for a few minutes. *Id*.

In terms of daily activities, plaintiff reported having no set schedule due to "how much my pain was bothering me," and because she can "normally […] only sleep one to two hour at a time." Tr. 302. When it comes to activities such as laundry, shopping, and housekeeping, plaintiff's son

helps her. *Id*. Plaintiff also endorsed not going out "unless she has to", not getting dressed unless she has to because it takes her "a while," that she uses the walls and bar for support in order to shower, she does not shave, and uses the wall and a vanity for support when using the bathroom. Tr. 303.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 22. The ALJ cited to inconsistencies in plaintiff's statements, activities of daily living, and conservative treatment as reasons for discounting plaintiff's subjective symptom testimony. Tr. 24.

In addressing inconsistent statements between plaintiff's testimony and her medical records, the ALJ discusses plaintiff's records at length. Tr. 22-24. For example, the ALJ points to reports of neck pain radiating into her shoulders with stiffness and decreased range of motion. Tr. 22 (citing Tr. 412, 444, 603, 709). The ALJ also includes CT scans from April 2019 and July 2021 showing multilevel degenerative disc disease, antetolisthesis, mild facet arthrosis, and mild neural foraminal stenosis with no evidence of fracture. Tr. 22 (citing Tr. 394, 426, 745, 753, 815, 852). Plaintiff's records also show she suffered from mild to moderate acromioclavicular arthritis, right medial epicondylitis, mild right-sided carpal tunnel syndrome, and left and right shoulder arm and joint pain with numbness and spasms. Tr. 425, 450, 485, 710, 725, 733, 735, 750, 799, 815, 862. Furthermore, plaintiff suffered from osteoarthritis in her hips and knees, complaining of intermittent, dull, tender, and throbbing pains. Tr. 495, 788, 613, 799, 804. Upon examination, she was tender to palpation, had limited range of motion in her right arm due to pain, a positive

Phalen's test on the right with swelling, decreased touch sensation in her upper extremities, and tremors in both hands, as well has having intact cranial nerve function, normal balance, and gait, five out of five muscle strength, and otherwise intact sensation and reflexes. Tr. 411, 426, 435, 463, 484, 497, 606, 725, 759, 814. As for plaintiff's ventricular systolic dysfunction, she complained of chest pain, fatigue, palpitations, sweating, and shortness of breath. Tr. 425, 442, 488, 495, 613. Plaintiff underwent a stress test in May 2019, where she scored 87% of her predicted maximum, and it was revealed she had mildly reduced left ventricular systolic function. Tr. 388-90, 412, 853. Plaintiff otherwise had a regular heart rate and rhythm, without murmurs, gallops, or rubs. Tr. 418, 426, 433, 441, 449, 454, 461.

In November 2020, plaintiff underwent a consultative examination. Tr. 637. There she complained of pain in her cervical spine which led to tension in her shoulders and back with radiating pain, as well as epicondylitis in her left and right elbows, and neuropathy resulting in sharp foot pain and numbness in her feet. *Id*. Plaintiff's conditions were worsened by moving wrong, exertion, and even sleep. *Id*. She treated her conditions with hot showers, massages, tramadol, naproxen, and use of a heating pad. *Id*. Upon examination, plaintiff had normal gait, no palpable muscle spasms, 5/5 muscle strength in her entirety, normal sensory exam findings with no numbness or loss of feeling, and no joint swelling or tenderness. Tr. 640-41. Plaintiff was also able to lift, carry, handle, pinch, grasp, and manipulate small and large objects without difficulty, squat and rise without assistance, walk on her toes but not stand on her heels, had normal balance, and could dress and undress adequately. Tr. 641. While she did have slight swelling in her right foot and a positive straight leg test on her left, the rest of her results were entirely normal. Tr. 640, 644.

Based on the inconsistencies between plaintiff's complaints and her results upon examination, the ALJ properly discounted plaintiff's subjective symptom testimony based on substantial evidence in the record. As such, while plaintiff argues for a different reading of the evidence, where the ALJ's finding is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). However, the analysis cannot end there, as lack of corroborating medical evidence cannot serve as the sole basis for discounting a claimant's testimony. See Brown v. Colvin, 2014 WL 6388540, *5-6 (D. Or. Nov. 13, 2014) (reversing the ALJ's credibility finding where the only rationale supported by substantial evidence was inconsistency with the medical record).

The ALJ's second rationale for discounting plaintiff's testimony was predicated upon her activities of daily living. As discussed above, her activities were limited by how much pain she was experiencing and whether she received adequate sleep. Plaintiff also noted that she does not go anywhere unless she has an appointment, needs to grocery shop, or do laundry. Tr. 302, 304-05. Plaintiff also stated that she requires her son's help in order to do laundry, shop, and housekeep. Tr. 302. When it came to personal care, plaintiff stated she had to use the walls and a bar for support when she showers, she uses the vanity and wall for support when using the bathroom, and that it takes her a while to get dressed whenever she actually has to get dressed. Tr. 303. However, as discussed above, plaintiff's consultative examination revealed she had no trouble squatting and rising, could rise from sitting, had no difficulty getting on and off the examination table, had a normal gait, walked without assistance, was able to lift, carry, handle, pinch, grasp, and manipulate small and large objects without difficulty, and could dress and undress adequately well. Tr. 641.

Therefore, based on the above, the ALJ properly discounted plaintiff's subjective symptom testimony based on her activities of daily living.

The ALJ's third, and final rationale, was based on plaintiff receiving only conservative treatment. The ALJ noted plaintiff's treatment included Xanax, clonidine, physical therapy, chiropractic care, acupuncture, muscle relaxers, nerve relaxers, anti-inflammatories, steroids, steroid injections, trigger point injections, Voltaren gel, and a combination of over the counter and prescription pain medication. Tr. 23-24 (citing Tr. 464, 485-86, 493, 498-99, 603-05, 631, 637-38, 742-43). Based on plaintiff's treatment, the ALJ concluded that plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." Tr. 24. The ALJ's reasoning, however, is unsupported.

The ALJ's claim that plaintiff has not received expected treatment is unfounded. The ALJ does not explain what the expected treatment would be, nor does the ALJ provide evidence that more aggressive treatment was available. See Lapeirre-Gutt v. Astrue, 382 Fed.Appx. 662, 664 (9th Cir. 2010) ("[T]he record does not reflect that more aggressive treatment options are appropriate or available. A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist"). Furthermore, the ALJ also misstates the legal threshold as that of a "totally disabled individual." Such a requirement has never been the yardstick against which we measure when deciding whether an individual meets the definition of disabled under the Act. See Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)).

Therefore, the ALJ was not justified on relying on conservative treatment as a basis to discount plaintiff's subjective symptom testimony.

In sum, the ALJ erred in discounting plaintiff's subjective symptom testimony due to conservative treatment. However, this error is harmless because the ALJ properly discounted

plaintiff's subjective symptom testimony due to inconsistencies between plaintiff's testimony and her medical records, as well as her activities of daily living.

## II.     Medical Opinion Evidence

Plaintiff asserts the ALJ improperly discredited the opinions of Anjanette Devine, FNP, Paulette Hawthorne, MSW, and Darcy Butcher, FNP.

Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[2] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

When determining how persuasive a medical opinion is, supportability and consistency are the most important factors to consider. 20 C.F.R. § 416.920c(b)(2). These two factors each have a different focus. For consistency, the ALJ considers how consistent a medical opinion is with the other evidence in the record *Id.* § 416.920c(c)(2). For supportability, the ALJ considers the

---

[2] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning (i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

relevancy of the objective medical evidence and supporting explanations presented by the medical source to justify their own opinion. *Id.* § 416.920c(c)(1).

Plaintiff contends the ALJ did not evaluate the medical opinions for either supportability or consistency. In the ALJ's decision, for all three opinions, the ALJ stated those opinions were "not supported by the longitudinal evidence of record." Tr. 25. For Devine and Hawthorne, the ALJ further concluded the consultative examiner's opinion was more persuasive because it was "based on an in-person evaluation." *Id*. For Butcher, the ALJ stated the opinion involved limitations that did not "correspond to any specific medically determinable impairment, including many of the environmental limitations." *Id*. Granted, "[e]ven when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012). Here, the agency's path cannot be reasonably discerned as the ALJ provides no reasoning for the conclusory statements.

The Commissioner argues the ALJ's reasoning is supported and cites to numerous records to provide evidence of that fact. Def's Br. 3-14, ECF 16. However, the Commissioner's argument fails because it amounts to nothing more than a post hoc rationalization, which this Court does not recognize. *See Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

In light of the lack of explanation, the ALJ's determination that the medical opinions of Devine, Hawthorne, and Butcher are unpersuasive is not backed by substantial evidence and therefore constitutes reversible legal error.

III.  **Lay Witness Testimony**

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001);

*Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (holding that competent lay witness testimony "*cannot* be disregarded without comment") (emphasis in original).

In addition to plaintiff's own subjective symptom testimony, her daughter also provided a third-party statement. Tr. 324-31. Plaintiff argues the ALJ erred by disregarding the lay witness statement without "giv[ing] reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The Commissioner argues the ALJ properly discounted the lay witness testimony because it was inconsistent with plaintiff's medical records. The Commissioner is correct.

Plaintiff's daughter provided a statement describing plaintiff's deterioration, stating that plaintiff suffers from insomnia, fatigue, chronic pain, and stress. Tr. 324. She also notes that plaintiff's daily activities depend on "how she feels," that she uses a support to use the bathroom, that cleaning her apartment only takes a few minutes because the apartment is small, that plaintiff's son helps her with housekeeping, that she can only lift five pounds, and that she can only walk 10-15 yards. Tr. 325-26, 329. Plaintiff's daughter further notes plaintiff has difficulties lifting, squatting, bending, standing reaching, sitting, using her hands, and kneeling, echoing plaintiff's own complaints. Tr. 329. The ALJ found this third-party statement inconsistent with plaintiff's medical records, which showed normal balance and gait, five out of five muscle strength, intact sensation and reflexes, full range of motion in her joints with somewhat decreased range of motion in her back, and normal muscle tone and tandem walking. Tr. 26.

As discussed above, plaintiff's subjective symptom testimony was properly discounted based on inconsistencies with her medical records as well as her activities of daily living. The ALJ discounted the lay witness testimony for the same reasons. Therefore, the ALJ did not err in evaluating the lay witness testimony from plaintiff's daughter.

### IV.    Remand for Further Proceedings

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel,* 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.,* 635 F.3d 1135, 1138 (9th Cir. 2011); see also *Dominguez v. Colvin,* 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by failing to properly evaluate the opinions of Anjanette Devine, FNP, Paulette Hawthorne, MSW, and Darcy Butcher, FNP, when determining plaintiff's RFC. Further proceedings would be useful in determining whether their opinions are, in fact, not supported by substantial evidence and also to allow the ALJ to resolve the conflict between their opinions and that of the consultative examiner.

In light of the conflicting medical opinions, the lack of reasoning in disregarding those medical opinions, and the need for the conflict to be resolved, the appropriate remedy is to remand to the Commissioner for further proceedings to adequately resolve the existing conflict by providing proper reasoning as well as take any further action necessary and issue a new decision.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 2nd day of February, 2024.

                                                  /s/ Jolie A. Russo
                                                    Jolie A. Russo
                                        United States Magistrate Judge